DANIEL NANCE, Appellant, v. ANDREW REES, Appellee.

JANET B. RINEER and GEORGE W. RINEER, Plaintiffs, v. THE STATE OF DELAWARE, PETER W. STEIL and ANGELO CITRO, Defendants and Third Party Plaintiffs, v. FRANCIS R. BRADLEY, Third Party Defendant.

(*May* 9, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*John Biggs, III,* and *John Merwin Bader* for appellant.

*William Prickett, Jr.,* for appellee.

*James P. D'Angelo* and *Stanley T. Czajkowski* for third party defendant.

*F. Alton Tybout* for defendants and third party plaintiffs.

Supreme Court of the State of Delaware, No. 50, 1959, and No. 12, 1960.

WOLCOTT, J.:

*Nance v. Rees* raises two questions for our decision. First, was there error in the charge of the trial judge to the jury and, second, is 10 *Del. C.* § 4541-§ 4543, authorizing the striking of special juries, unconstitutional?

Subsequent to that appeal, *Rineer v. State, et al.,* No. 12, 1960 was certified to us raising the same constitutional question. By stipulation entered in No. 12, 1960, the parties to that cause adopted the briefs and oral argument which had theretofore been presented to us in the Nance appeal.

We thereupon consolidated the two causes for decision and, in so doing, avoided the necessity of passing upon a preliminary

question raised by the appellee in the Nance appeal as to the timeliness of the objection to the striking of a special jury in that case.

Preliminarily, we decide the first question raised in the Nance appeal since it is not common to both causes.

The Nance case is one for personal injuries arising out of an accident which occurred on the highways of New Castle County in which the plaintiff, a pedestrian, was involved in a collision with the vehicle of the defendant.

The parties have different versions of the facts. The plaintiff testified that he was standing on the west shoulder of the highway after sunset, carrying no light or reflector, and while so standing there was struck by the motor vehicle of the defendant.

The defendant testified that as his vehicle was proceeding along the highway he saw the plaintiff not far in front of him walking across the shoulder of the highway; that he thereupon swerved his vehicle to the left and applied the brakes, but that the plaintiff continued to walk forward and collided with the defendant's vehicle at a point in the right rear.

Each party charged the other with negligence based upon the violation of different sections of the Motor Vehicle Code, 21 *Del. C.* § 101 *et seq.* The specific sections are not important to the decision of the question raised.

The plaintiff requested the trial judge to instruct the jury that violation of a section of the Motor Vehicle Code was evidence of negligence. The defendant requested the trial judge to instruct the jury that violation of a section of the Motor Vehicle Code was negligence *per se.* The court rejected the plaintiff's requested prayer and stated that the charge would be made in accordance with the defendant's request. However, in actually instructing the jury, the court stated that if the plaintiff violated the statute in question, and if such violation

was a proximate cause of the accident, the plaintiff was contributorily negligent.

With respect to the defendant's negligence, the court instructed the jury that if it found the defendant to have violated the particular statute involved, and if the jury found such violation to be a proximate cause of the accident, in that event the defendant's violation of the statute was considered "in law, as evidence of negligence or as constituting negligence *per se*", and concluded that if the defendant violated any statute "then the statutory violation may be considered by you as evidence of negligence".

Following the instructions to the jury, the plaintiff called to the attention of the trial judge the apparent discrepancy of his instructions upon negligence arising from the violation of motor vehicle statutes. The trial judge recalled the jury and, in order to clear up any apparent discrepancy in his charge, stated *inter alia*: "Now it matters not which party violates a statute, that is evidence of negligence".

Before us the plaintiff argues, first, that his requested charge on negligence was not given and, second, that in charging as he in fact did, the trial judge confused the jury.

■ As to the argument that it was error for the trial judge to refuse to charge the jury as the plaintiff requested, the answer is that to have done so would have been contrary to the law of this state. The rule applied repeatedly in Delaware courts in personal injury cases is that the violation of a statute enacted for the safety of others is negligence in law or negligence *per se*. *Campbell v. Walker*, 2 *Boyce* 41, 78 *A*. 601; *Farrow v. Hoffecker*, 7 *Penn*. 223, 79 *A*. 920; *Lynch v. Lynch*, 9 *W. W. Harr*. 1, 195 *A*. 799; *Wealth v. Renai*, 10 *Terry* 289, 114 *A*. 2d 809.

Plaintiff cites *Giles v. Diamond State Iron Co.*, 7 *Houst*. 453, 8 *A*. 368, in support of his argument. If that case, however, does in fact support the plaintiff's argument, it must now be regarded

as no longer the law by reason of the later decisions above cited. There is, therefore, no merit to the first argument made by the plaintiff.

With respect to the second phase of the plaintiff's argument under this point, we are of the opinion that the recall of the jury by the trial judge and the further instructions given by him clarified whatever discrepancy there may have been in the charge, or any confusion that may have remained in the jury's mind. We furthermore note that upon recall of the jury the further instructions given were those requested by the plaintiff, even though, as we have pointed out, such instructions were erroneous. In any event, we do not think the plaintiff can be heard to complain of what took place since we find no prejudicial error in the proceedings.

We turn now to the question of the constitutionality of the special jury statute. Plaintiffs argue that 10 *Del. C.* § 4541, authorizing the ordering of special juries for trials, is unconstitutional. The argument is that it violates Article I, Section 4 of the Delaware Constitution, *Del. C. Ann.* which requires that trial by jury shall be as heretofore.

The striking of special juries for the trial of causes is provided by 10 *Del. C.* §§ 4541-4543. By § 4541(a) it is provided that "a special jury for the trial of a cause, shall be ordered by the Court upon the application of either party". § 4541(b) (c) and (d) provide for the mechanics of drawing, striking and summonsing the special jurymen. § 4542 provides the method of impaneling a special jury. § 4543 provides that the party applying for a special jury shall pay the expense of the special jury which shall not be taxed as costs in the case, unless the court, immediately after the trial, shall certify on the record that the cause was proper to be tried by a special jury. § 4543 further authorizes the court, in its discretion, to order payment of the costs of striking and summonsing a special jury before the trial of the cause.

The statutory law now embodied in 10 *Del. C.* §§ 4541-4543 has an ancient history in the statutes of Delaware. The first complete act regulating the calling of special juries was enacted in 1810 (4 *Laws,* Ch. CXX, p. 322). Basically, the act of 1810 is the statute of today with the exception that the 1810 act "authorizes and requires" the court, upon the motion of either party, to order a special jury to be struck, while the present statute directs that the court upon application "shall" order a special jury. The 1810 act appears in the same form in 1829 Code, Ch. 7, p. 119.

The codification of 1852 continued the same statute except that the words "authorized and directed" were changed to read "shall". Thereafter, through the various Codes the wording of the statute has not been changed fundamentally. The provisions of 10 *Del. C.* §§ 4541-4543 are substantially the same as 1852 Code, Ch. 7.

The present statutory provisions relating to special juries, then are traceable directly back to 1810 when, what is apparently the first comprehensive statute, was enacted. It seems apparent, however, that the practice of using struck* or special juries existed in this state prior to that year. For example, in 1793 An Act For More Certainly Obtaining Returns of Impartial Juries, And Their Better Regulation (2 *Laws,* Ch. VIII c, p. 1071), directed the return by the sheriff of a jury panel, except "in cases where a special jury shall be struck by rule of court". This is a clear indication that in 1793 special juries were struck in accordance with a then existing rule of court. It seems apparent that there was no specific statutory authority for the practice.

The only early rule of court now of record is Rule 17 of the Supreme Court (then a trial court of unlimited jurisdiction)

---

*The term "struck" apparently derived from the practice of drawing 48 names and then the striking alternatively by the parties of names until a panel of 24 was reached.

promulgated at the April Term, 1790 (1 *Del. Cas. XL*) which provided that if a cause in which a special jury had been struck was not tried at the term for which such jury had been summonsed, the jury would be discharged and the imposition of costs would be at the court's discretion. This is unmistakable proof that in 1790 the practice of striking special juries was established.

The few early reported cases also indicate that the striking of special juries was an established practice in Delaware courts from an early time. See *Polk's Lessee v. Ross*, 1794, 1 *Del. Cas.* 40; *Burton's Lessee v. Prettyman*, 1793, 1 *Del. Cas.* 11, s. c. 2 *Del. Cas.* 4; and *Newbold's Lessee v. Stockley*, 1793, 1 *Del. Cas.* 10. In view of these early sources, there can be no doubt but that the practice of summonsing struck juries existed in Delaware prior to the passage of the Act of 1810. There can be no doubt, also, but that the practice did not originate in a Delaware statute, since no such statute has been found. The question naturally arises, therefore, whence came the practice.

The answer is found in Article 25 of the Constitution of 1776, the first Constitution of the Delaware State, which provided in part as follows:

"The common law of England, as well as so much of the statute law as have been heretofore adopted in practice in this state, shall remain in force, unless they shall be altered by a future law of the Legislature; * * *."

The effect of this article was considered by the former Court in Banc in *Hudson v. Flood*, 5 *Boyce* 450, 94 *A.* 760, a case in which it was necessary to decide whether an English statute of 25 Geo. II, prohibiting an attesting witness to a will from taking a legacy under the will, was in force in Delaware. It was held that the statute in question had never been adopted into practice in this state and was therefore not part of Delaware law. As an incidental of the decision, however, it was held that an English statute enacted prior to the Revolution which

had either been expressly recognized by statute of the Colonial Assembly, or had been recognized as a general usage and practice by the bench and bar of the state, must be held to have been "adopted in practice" within the meaning of Article 25 of the Constitution of 1776.

Applying the rule of *Hudson v. Flood* to the question before us, narrows our consideration to the source of the practice, *i.e.*, whether grounded in the common law or in an English statute which the colonists brought with them to this state.

Whether or not the practice of struck juries developed as a part of the common law from early days, the fact is that by the statute 2 *Geo. II*, c. 25, either party, upon motion, was entitled to have a special jury struck upon the trial of any issue, the moving party paying the expense, unless the court certified that the cause required a special jury. Originally, apparently, special juries were struck in causes "of too great nicety" for the ordinary panel, or in cases where the sheriff who drew the common panel was suspected of partiality. *III Sharswood's Blackstone Commentaries*, 357.

It would serve no purpose to relate the details by which English special juries were struck. It suffices to point out that by 2 *Geo. II*, c. 25 the procedure followed was fundamentally the same as that embodied in the Delaware Act of 1810 and in 10 *Del. C.* §§ 4541-4543. We think the similarities make the conclusion inescapable that the Act of 1810 did no more than codify into statutory law a practice long followed in Delaware courts as a part of the legal heritage from England. The Act of 1810 in fact is patently modeled upon 2 *Geo. II*, c. 25 not only in the statutory scheme but in much of the language as well. It is true, as plaintiffs point out, that part of the Act of 1810 relating to the taxing of costs is taken from a later English statute, 24 *Geo. II*, c. 18 which amended 2 *Geo. II*, c. 25, but this fact does not help their position for the amendatory act must

be taken to have been "adopted into practice" in the Territories, now Delaware.

The English statute contains the phrase that upon motion the courts are "authorized and required" to strike juries, which is repeated in the Act of 1810. The phrase was changed in the 1852 Code to the word "shall." Upon this fact plaintiffs make an argument that somehow prior to the Revolution the allowance of a struck jury was discretionary with the court and, accordingly, the 1852 Code provision making the allowance of a struck jury mandatory was a change in the system and thus violative of the guarantee that jury trials shall "be as heretofore". We think, however, that the basic premise of change is non-existent for we see little if any difference, other than commendable brevity, between "authorized and required" and "shall".

We hold, therefore, that the practice now embodied in 10 *Del. C.* §§ 4541-4543 was followed in this state prior to the Revolution and must, therefore, be held to satisfy the requirement of jury trial as heretofore.

Plaintiffs argue that the practice is violative of due process under the 14th Amendment of the Federal Constitution, but we think not. Since the practice long antedates the Revolution, it cannot be inconsistent with due process of law. *Ownbey v. Morgan*, 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837 and see, also, *McLaughlin v. Bahre*, 5 *W. W. Harr.* 446, 166 *A.* 800.

Other arguments made by plaintiff to the effect that the requirement of deposit of expenses by the moving party in effect denies the right to trial by jury to a poor litigant, and an argument based upon the doctrine of separation of powers, which, frankly, we do not understand, we think, find their answer in our holding that the general practice of trial by special jury precedes our first Constitution and must, therefore, be held to be consistent with it.

The proper construction, therefore, of 10 *Del. C.* §§ 4541-4543 is that upon the application of either party to a

cause the court must grant the right to a trial by special jury. The only matter left to the discretion of the court is the authority granted by § 4543 to award the costs of the special jury after the trial.

Since there seems to be some confusion about the application of the particular sections of the Code, we feel impelled to note that the costs of summonsing a special jury may, in the court's discretion, be awarded to the winning party as a part of the cost to be taxed in the cause only if application is made therefor immediately after the trial. We take this provision of the statute to mean that the failure to apply at such time for an award of the costs amounts to a waiver on the part of the winning party. Of course, in the appeal before us there has been no application to tax the expenses of the special jury as a part of the cost of the case, and it is obvious that at this time the right has been waived.

Since the matter of taxing the costs lies in the discretion of the trial court, it is obvious that there must be some reason to impel the court to exercise its discretion in that respect. We can think of no reason for so doing except that the particular cause is of such complexity as to make desirable the striking of a special jury which, presumably, would be better able to deal with complex issues of fact. As a practical matter, we would suppose that only in suits involving breach of contract with elaborate proof of complex factual situations would the court's discretion be moved to award the costs to the winning party.

We have noted from the briefs before us one or two matters which we think we should call to the attention of the trial courts and the bar. We understand that the present practice followed by the Prothonotary, at least of New Castle County, is to prepare a list of forty-eight names from which each party strikes twelve, leaving a list of twenty-four. This practice complies with the provisions of 10 *Del. C.* § 4541(b) and (c). Subsection (d) of that Code section then requires the remaining

twenty-four persons on the list to be summonsed as the special jury.

10 *Del. C.* § 4542 provides that the twenty-four jurors thus summonsed shall be the panel from which a jury of twelve shall be drawn, as are other juries for the trial of causes. If for any reason any of the twenty-four jurors are unable to sit, the allowed challenges shall be limited so as to arrive at a jury of twelve.

We understand, however, that in order to insure twelve jurors being present at the trial, the Prothonotary has instituted the practice of summonsing sixty jurors rather than the forty-eight required by the statute. We point out there is no statutory authority for the practice of calling aditional jurors, and one would suppose that failure to comply with the statute would constitute error in the cause.

We also understand that the Prothonotary, presumably acting under 10 *Del. C.* § 4543, has required of the party applying for a special jury a deposit of $400 to meet the expenses of such a jury. We note that the concluding sentence of § 4543 authorizes the court in its discretion to make an order concerning the payment of costs in advance. We have doubt as to the authority of the Prothonotary to require on his own initiative such a deposit. We think it would be better practice and more in compliance with the act if the court in its order allowing a special jury made provision therein for the deposit to secure the costs.

In conclusion, while we have upheld as constitutional the special jury statute, we cannot refrain from expressing our doubt as to the desirability of permitting either party to demand a special jury as a matter of right. More and more the device of the special jury seems to be utilized by defense counsel in personal injury actions in which there are no complexities of fact, as counsel for the appellee in *Nance v. Rees* conceded to be the case with this appeal. If special juries have developed

into defendants' juries, we think that fact might well justify the General Assembly in re-examining the subject. In our opinion, there is no valid excuse for taking from the ordinary jury panel the trial of non-complex tort actions.

For the foregoing reasons, the judgment in *Nance v. Rees* is affirmed.

We make the following answers to the questions certified to us in *Rineer v. State v. Bradley*:

1. Question No. 5(a), having by stipulation been withdrawn, does not require an answer.

2. Question No. 5(b), which reads as follows, "Is Title 10, Section 4541 *Del. Code of* 1953, violative of the provisions of Article 1, Section 4 of the Delaware Constitution, which provides, *inter alia*, 'Trial by jury shall be as heretofore'?", is answered in the negative.

3. Question No. 5(c), which reads as follows, "If the Superior Court has no discretion as to whether a special jury shall be empaneled, is Title 10, Section 4541, *Del. Code of* 1953, contrary to the Federal Constitution and the State Constitution in that it deprives parties litigant of due process of law?", is answered in the negative.